U.S. DISTRICT COURT
FOR NEW JERSEY

Marita Fisher McGee : CIVIL ACTION
:
    Plaintiff, :
V. : Docket No. _____
:
Relevate Health Group, :
:
    Defendant. :

## VERIFIED COMPLAINT

The Plaintiff, by and through her counsel, the Hamilton Law Firm PC, does hereby raise the following Complaint against the Defendants:

### The Parties

1. The Plaintiff is an individual residing at 4 Lambo Court, Trenton, Mercer County, New Jersey.

2. The Defendant is a for profit corporation with its principal place of business located at 4270 Ivy Pointe Boulevard, Cincinnati, Ohio.

### Jurisdiction

3. The Plaintiff brings this action in the U.S. District Court for the District of New Jersey based upon the complete diversity of the parties and the residence of the Plaintiff in New Jersey.

4. The Plaintiff brings this action seeking damages in excess of $200,000.

### Facts Common to All Counts

5. Ms. McGee has worked for Relevate since August 14, 2017.

6. Ms. McGee was fired on January 31, 2019.

7. During her tenure at Relevate, Ms. McGee served as the VP, Client Development.

8. The offer letter dated August 14, 2017, stated that Ms. McGee's supervisor was Scott Weintraub.

9. Per the terms of the Offer Letter, Ms. McGee was to receive base compensation of $125,000 per year.

10. In addition, she was to receive commission as identified in the offer letter in accordance with the 3 tier level contained therein.

11. The Offer Letter further provided that the "commission will be paid monthly. Payment will be paid on the month following recognition (Commission on net revenue recognized for March will be paid in April.), and may at RHG's sole discretion, be included in your regular payment check or paid separately."

12. The Offer letter required that Ms. McGee be employed through the last business day of the month to earn any commissions.

13. The Offer letter further provides that "[t]he terms and conditions of your sales commission structure are subject to change without notice at RHG's sole discretion."

14. In 2018, Relevate changed its commission payout obligations from "recognized revenue" to "POs".

15. "POs" refers to purchase orders also known as "IOs" in the industry, and are specifically referred to as IOs in the Pfizer and Novo Nordisk/Publicis deals.

16. The changed commission structure would be "paid immediately" once incentive goal of 1% or 2% was met.

17. The Relevate sales year runs from September 1 to August 31 of the next calendar year.

18. Ms. McGee's sales quota for 2018-2019 was to bring in $1.5 million in business.

19. For the 2018-2019 fiscal year, Ms. McGee brought in $2.3 million in business for Relevate.

20. Through her sales efforts, Ms. McGee was able to bring in business to Relevate from Pfizer and Novo Nordisk (administered through Publicis, an advertising agency).

21. In early December 2018, Ms. McGee received a bouquet of flowers from Karen Snay, her direct supervisor, congratulating her on bringing in the Novo Nordisk business.

22. On 12/21/2018, Ms. Snay sent Ms. McGee a Poinsettia gift over the holidays with a card which read "Thank you for your hard work and perseverance this year! I am so excited for your success and can't wait to watch you continue to rock in 2019! I appreciate you. Merry Christmas! Karen."

23. On January 7, 2019, Ms. McGee had a monthly telephone conference meeting with Scott Weintraub, the president and CEO of Relevate.

24. On January 7, 2019, Mr. Weintraub told Ms. McGee that he was very happy with her work and the deals that she had brought in and that she did not have to worry about her job.

25. Mr. Weintraub told Ms. McGee that the Novo Nordisk/Publicis deal was the largest deal of new business brought into the company in its history.

26. Because of Ms. McGee's efforts, Relevate now also has a Master Services Agreement with Publicis which permits them to work for all of Publicis' clients, not just Novo Nordisk.

27. This Master Services Agreement between Relevate and Publicis would not exist but for Ms. McGee's work.

28. On January 11, 2019, Ms. McGee coordinated a large "launch" meeting for the work being done for Novo Nordisk/Publicis.

29. The work for the Pfizer accounts had already begun in December 2018.

### The Pricing Meeting

30. Ms. McGee, at the instruction of Ms. Snay and Mr. Cushman, prepared the scope of work contract to send to Publicis.

31. The Scope of Work Contract was transmitted to Publicis in December 2018.

32. The Scope of Work Contract contained specific items which were being excluded from the contract price for the Novo Nordisk work.

33. Publicis and Novo Nordisk asked Relevate to include those excluded items in the scope of work for the same contract price.

34. These discussions and negotiations took place and December 2018 and early January 2019.

35. The monetary value of the excluded items was likely to cost approximately $300,000.

36. Publicis has previously asked for a $50,000 concession on an early part of the Novo Nordisk work that Relevate had agreed to.

37. On January 24, 2019, Ms. McGee received an email from her supervisor, Karen Snay, indicating that she would have a discussion about the Publicis negotiations with Chris Cushman as a "1:1 with him".

38. Ms. Snay specifically advised Ms. McGee that she should not be present for that meeting even though Ms. McGee had been the primary contact with Publicis and had been the person who originated the work for Relevate.

39. Ms. McGee received Ms. Snay's email at 9:37 p.m. on January 24, 2019.

40. On the morning of Friday, January 25, 2019, Ms. Snay met with Mr. Cushman, Mr. Weintraub and Mr. Jeff Spanbauer, the CEO and Chief Operations Officer.

41. The Plaintiff refers to this meeting at the Pricing Meeting as Ms. Snay's 1/24/19 email indicated that she would be "negotiating" the pricing with Mr. Cushman.

42. Ms. McGee was terminated on the morning of Monday, January 28, 2019, one hour before a major meeting on the Novo Nordisk/Publicis project.

43. Ms. McGee was intentionally and willfully excluded from the Pricing Meeting.

44. Ms. McGee was intentionally and willfully excluded from attending the Novo Nordisk/Publicis project meeting scheduled for January 28, 2019.

45. Ms. McGee was intentionally excluded from these meetings because Relevate decided to agree to the concessions requested by Publicis but to pay for them using Ms. McGee's commission.

46. According to the 2018 Commission Agreement, Ms. McGee has earned $190,000 in commissions for the Pfizer and Novo Nordisk/Publicis deals.

47. The 2018 Commission Agreement was in place as of Ms. McGee's termination and had not been changed or amended in any way.

### Relevate's Bad Faith

48. Ms. McGee first began to sense trouble on January 15, 2019, when she was asked to meet with her supervisor, Karen Snay.

49. Ms. Snay told Ms. McGee that the entire organization was not happy with her because she had failed to schedule certain meetings on her accounts.

50. Ms. McGee was able to provide Ms. Snay with emails showing that the meetings had in fact been scheduled.

51. Rather than continue to dispute her supervisor's false assertions, Ms. McGee continued with her work day and promised her co-workers that she would do a better job of communicating with them.

52. On that same day, January 15, 2019, during a group telephone conference, Ms. Snay sent Ms. McGee a text during the meeting indicating that she was doing a great job communicating and complimenting her on how well she was handling the meeting.

4

53. Ms. McGee believed that the alleged concerns raised by Ms. Snay had been resolved and that the project work was proceeding well.

54. Then, on January 21, 2019, contrary to Ms. Snay's earlier representations and texts, Ms. McGee received an email from Ms. Snay reiterating the issues that she had raised on January 15, 2019.

55. Ms. McGee had already demonstrated, via documentary proof, that Ms. Snay was incorrect on these issues.

56. However, once again, rather than argue with Ms. Snay and in an effort to maintain a good relationship with her supervisor, Ms. McGee responded to that January 21, 2019 email respectfully and cooperatively, indicating that she would make her best efforts to communicate better and "move forward in a positive productive manner."

57. A significant project launch meeting for the Novo Nordisk/Publicis account was scheduled to take place on January 28, 2019.

58. An hour before the client meeting was to take place, Ms. McGee was told that she was being terminated under the "at will" doctrine.

59. Ms. McGee was not given a reason for the termination.

60. Ms. McGee was told that she was <u>not</u> being terminated for performance reasons.

61. Ms. McGee was told that she would not receive commission generated by the Pfizer and Novo Nordisk/Publicis deals.

62. Ms. McGee has fulfilled her end of the bargain, i.e. to generate business for Relevate.

63. Relevate has received the benefit of that business.

64. Ms. McGee has brought in $2.3 million worth of new business via the Pfizer and Novo Nordisk/Publicis deals.

65. Ms. McGee was terminated for no fault of her own.

66. Relevate states that Ms. McGee is not entitled to any commission on the Novo Nordisk/Publicis account because the PO/IO had not been executed.

67. Ms. McGee had prepared and submitted the IO for review and execution by her manager and the leadership team, Chris Cushman, in early December 2018..

68. It is Ms. Snay and Mr. Cushman who made decisions regarding the projects and pricing.

69. Ms. McGee was instructed by Ms. Snay and Mr. Cushman on what pricing would be acceptable to Relevate to perform the work for Pfizer and Novo Nordisk/Publicis.

70. Any pricing or contracting documents sent by Ms. McGee to Publicis were first checked and approved by both Karen Snay and Chris Cushman, who set the pricing for the deal.

71. Upon receiving confirmation that the contract terms with Novo Nordisk/Publicis had been resolved, Mr. Cushman delayed the execution of the IO by renegotiating the price.

72. The IO was ultimately signed on February 28, 2019, a month after Ms. McGee's termination.

73. Relevate intentionally delayed the execution of the IO, over which it had exclusive control, to avoid paying Ms. McGee her commission.

74. Ms. McGee has been and continues to suffer financial and emotional damages by Relevate's actions in terminating her to avoid paying her commissions.

## First Count
### (Breach of Contract)

75. The Plaintiff reiterates the averments of fact set forth in paragraphs 1 through 74 of the Complaint as though recited herein verbatim and at length.

76. Relevate offered to pay Ms. McGee commission upon receipt of purchase orders for sales generated by her efforts.

77. Ms. McGee accepted this offer and worked hard to generate the sales with Pfizer and Novo Nordisk/Publicis in late 2018-early 2019.

78. In fact, Ms. McGee was able to draft and submit all of the necessary paperwork to the client while on vacation in Disney World.

79. Ms. McGee had more than exceeded her sales quotas for the financial year 2018-2019.

80. Relevate terminated Ms. McGee to avoid paying her $190,000 in commissions due and owing to her.

81. In doing so, Relevate has breached the terms of its agreement with Ms. McGee.

82. Ms. McGee has been financially and emotionally harmed and continues to suffer damages as a direct and proximate result of Relevate's actions.

Wherefore, the Plaintiff seeks judgment against the Defendant as follows:

(A)   Compensatory damages;
(B)   Consequential damages;
(C)   Pre-judgement and post-judgment interest;
(D)   Counsel fees and costs of suit incurred herein; and
(E)   Such other relief that this court deems just and equitable under the circumstances.

## SECOND COUNT
### (Breach of Covenant of Good Faith and Fair Dealing)

83. The Plaintiff reiterates the averments of fact set forth in paragraphs 1 through 82 of the Complaint as though recited herein verbatim and at length.

84. The Plaintiff relied upon the 2018 Commission Agreement in good faith.

85. The Plaintiff, believing Relevate's representations in the 2018 Commission Agreement, used her network and connections to obtain contracts from Pfizer and Novo Nordisk/Publicis.

86. Relevate's owners and her supervisor were extremely happy with the contracts brought in by Ms. McGee and acknowledged her hard work and contributions to the company.

87. Relevate then terminated Ms. McGee to avoid paying her commissions.

88. Relevate has received the benefit of the contracts at Pfizer and Novo Nordisk/Publicis as a direct result of Ms. McGee's efforts.

89. Mr. Weintraub acknowledged that despite having connections at both companies, neither he nor Jeff Spanbauer had been able to close this business.

90. As a direct result of Ms. McGee's work, Relevate now also has a Master Services Agreement with Publicis that provides them with additional income and business opportunities.

91. Relevate has acted in bad faith and with unclean hands to terminate Ms. McGee to avoid paying her commissions.

92. Relevate's bad faith and unclean hands violates the covenant of good faith and fair dealing implied in every contract.

93. Ms. McGee has been damaged, financially and emotionally, and continues to suffer damages as a direct and proximate result of Relevate's actions.

Wherefore, the Plaintiff seeks judgment against the Defendant as follows:

(A) Compensatory damages;
(B) Consequential damages;
(C) Pre-judgement and post-judgment interest;
(D) Counsel fees and costs of suit incurred herein; and
(E) Such other relief that this court deems just and equitable under the circumstances.

### THIRD COUNT
(Unjust Enrichment)

94. The Plaintiff reiterates the averments of fact set forth in Paragraphs 1 through 93 of the Complaint as though recited herein verbatim and at length.

95. Relevate has received the benefit of the Pfizer and Novo Nordisk/Publicis contracts brought in by Ms. McGee.

96. Relevate has also received the benefit of the Master Services Agreement generated by Ms. McGee's hard work and efforts.

97. Despite acknowledging that Ms. McGee generated these contracts through her efforts, Relevate terminated Ms. McGee and has refused to pay her the commissions she is owed pursuant to the 2018 Commission Agreement.

98. Relevate has been unjustly enriched at Ms. McGee's expense.

99. Relevate has kept the commissions due and owing to Ms. McGee and would not have had the Pfizer and Novo Nordisk/Publicis contracts or the Master Services Agreement but for her efforts.

100. Ms. McGee has been damaged and continues to suffer damages as a direct and proximate cause of Relevate's bad faith and unjust enrichment.

Wherefore, the Plaintiff seeks judgment against the Defendant as follows:

(A) Compensatory damages;
(B) Consequential damages and punitive damages;
(C) Pre-judgement and post-judgment interest;
(D) Counsel fees and costs of suit incurred herein; and
(E) Such other relief that this court deems just and equitable under the circumstances.

## FOURTH COUNT
### (Quantum Meruit)

101. The Plaintiff reiterates the averments of fact contained in paragraphs 1 through 100 of the Complaint as though recited herein verbatim and at length.

102. Relevate has received and kept the full benefit of the Pfizer and Novo Nordisk/Publicis contracts generated by Ms. McGee.

103. Relevate promised to pay Ms. McGee commission in accordance with the 2018 Commission Agreement.

104. Relevate has refused to pay Ms. McGee the commissions that she has earned as a direct result of generating work for Relevate.

105. In the event that Relevate alleges that the 2018 Commission Agreement is not legally binding upon it, Ms. McGee is entitled to receive the value of the commissions so represented therein.

106. Ms. McGee must be compensated for the benefit that Relevate is receiving as a direct result of her sales efforts.

107. Ms. McGee has been damaged and continues to suffer damages as a direct and proximate result of Relevate's intentional, willfully and wanton acts of leading Ms. McGee to generate sales and then terminating her employment and refusing to pay the commissions due and owing to her from those sales.

Wherefore, the Plaintiff seeks judgment against the Defendant as follows:

(A) Compensatory damages;
(B) Consequential damages and punitive damages;
(C) Pre-judgement and post-judgment interest;
(D) Counsel fees and costs of suit incurred herein; and
(E) Such other relief that this court deems just and equitable under the circumstances.

## FIFTHCOUNT
### (Fraud)

108. The Plaintiff reiterates the averments of fact set forth in paragraphs 1 through 107 of the Complaint as though recited herein verbatim and at length.

109. Relevate rolled out the 2018 Commission Agreement via a presentation to the sales team.

9

110. Ms. McGee was one of 5 sales people at the Company and was a recipient of the PowerPoint slides describing the 2018 Commission Agreement and plan.

111. Relevate changed the commission payment event from "received revenue" from the client to simply having "received POs/IOs."

112. Relevate further changed the tiers of commission and percentage amounts payable to the sales people.

113. Relevate also changed the timing of the payment to agreeing to make payment "immediately" upon receipt of the POs/IOs.

114. Relevate made these changes to its commission agreement unilaterally and with the intention that its employees rely on those terms and conditions of payment.

115. Relevate and it's leadership have admitted Ms. McGee's success in bringing in the Pfizer and Novo Nordisk/Publicis deals.

116. Mr. Weintraub even admitted that despite Mr. Spanbauer and he having connections at both companies, neither had been able to secure these deals.

117. Relevate did not receive any business, signed contracts, and/or revenue from the Novo Nordisk/Pfizer Publicis deals prior to Ms. McGee's involvement and hard work to secure that business.

118. Relevate did not have a Master Services Agreement with Publicis prior to Ms. McGee's work on the Publicis account.

119. Ms. Snay sent Ms. McGee a flowering plant to acknowledge her success in securing these deals.

120. Relevate acknowledges that Ms. McGee was not terminated for any performance related issue.

121. Relevate advised that Ms. McGee was being terminated under the "at will" employment doctrine.

122. Relevate intentionally and willfully directed Ms. McGee to bring in deals using her contacts and relationships and then terminated her and have since refused to pay her commission.

123. Relevate and its senior leadership team decided to withhold payment of Ms. McGee's commission to offset the cost of the concessions requested by the client, Publicis.

124. To justify its decision to terminate Ms. McGee, Relevate now claims that she made errors in the pricing of the deals.

125. Ms. McGee was not the employee who determined pricing for the deals.

126. Rather, Ms. McGee has emails confirming that Ms. Snay and Mr. Cushman, her supervisors, were responsible for setting pricing on all contracts.

127. Relevate now claims that Ms. McGee needed to be employed on the date that the POs/IOs were signed.

128. Relevate intentionally and willfully delayed the execution of the POs/IOs until after her termination.

129. The POs/IOs for the Pfizer deal had been signed in December 2018.

130. The POs/IOs for the Novo Nordisk/Publicis deal were signed on February 28, 2019, a month after Ms. McGee's termination.

131. In fact, the POs/IOs for the Novo Nordisk/Publicis deal signed on February 28, 2019 did not differ substantially from those prepared by Ms. McGee prior to her termination.

132. Relevate intentionally mislead Ms. McGee into believing that she would receive commission for the deals she brought to the company in 2018-2019.

133. Relevate intentionally and willfully delayed the execution of the Novo Nordisk/Publicis IO until after Ms. McGee's termination.

134. Relevate intentionally and willfully terminated Ms. McGee one hour prior to a significant project meeting to limit her further involvement with the Novo Nordisk/Publicis deal.

135. Relevate has acted intentionally to defraud Ms. McGee of the commissions due and owing to her from the Pfizer and Novo Nordisk/Publicis deals.

136. Ms. McGee has been damaged and continues to suffer financial and emotional damages as a direct and proximate result of Relevate's bad faith, intentional and fraudulently misleading actions.

Wherefore, the Plaintiff seeks judgment against the Defendant as follows:

(A)  Compensatory damages;
(B)  Consequential damages and punitive damages;
(C)  Pre-judgement and post-judgment interest;
(D)  Counsel fees and costs of suit incurred herein; and

(E)     Such other relief that this court deems just and equitable under the circumstances.

## SIXTH COUNT
(Conspiracy to commit fraud)

137. The Plaintiff reiterates the averments of fact set forth in paragraph 1 through 136 of the Complaint as though recited herein verbatim and at length.

138. Ms. McGee has earned $190,000 in commissions as a direct result of business brought in by her to Relevate.

139. Ms. McGee brought in $2.3 million in business from Pfizer and Novo Nordisk/Publicis.

140. Relevate is receiving the benefit of the business brought in by Ms. McGee.

141. Relevate did not have a relationship with Publicis or do any work for Publicis prior to Ms. McGee's establishment of that connection.

142. As a result of Ms. McGee's work, Relevate now has a Master Services Agreement with Publicis to do work for Novo Nordisk as well as all of its other clients.

143. Relevate's executive leadership team (Ms. Snay, Mr. Cushman, Mr. Weintraub and Mr. Spanbauer met on Friday morning, January 25, 2019 (the "Pricing Meeting").

144. Ms. McGee was specifically excluded from the Pricing Meeting via an email sent to her on Thursday, January 24, 2019, at 9:37 p.m. from Ms. Snay.

145. At that Pricing Meeting, Relevate's senior leadership conspired to terminate Ms. McGee prior to the Publicis meeting scheduled for Monday, January 28, 2019, at 11:00 a.m.

146. At that Pricing Meeting, Relevate's senior leadership team conspired to withhold Ms. McGee's commissions to offset the cost of concessions they had agreed to give to Publicis.

147. According to the conspired plan set on Friday, January 25, 2019, Ms. McGee was terminated on the morning of Monday, January 28, 2019, one hour before the Publicis meeting.

148. According to the conspired plan set at the Pricing Meeting, Ms. McGee was told that she was being terminated under the "at will" doctrine.

149. According to the conspired plan set at the Pricing Meeting, Ms. McGee was told that she would not receive any commissions for any work related to Publicis or Novo Nordisk.

150. Relevate, Karen Snay, Chris Cushman, Scott Weintraub and Jeff Spanbauer have conspired to defraud Ms. McGee out of the commissions she has earned and that were required to be paid to her pursuant to the 2018 Commission Agreement.

151. Ms. McGee has been financially and emotionally damaged and continues to suffer damages as a direct and proximate result of Relevate's intentional, willful, wanton and malicious actions.

_Ayesha Hamilton_
Ayesha Hamilton, Esq.
Hamilton Law Firm PC
Counsel for the Plaintiff
13 Roszel Road, Suite C 226
Princeton, New Jersey 08540
Tel. (609) 945-7310
Ahamilton@ahlawpc.com

Dated: September 26, 2019

## DESIGNATION OF TRIAL COUNSEL

Ayesha Hamilton, Esq. is named as trial counsel in this matter.

_Ayesha Hamilton_
Ayesha Hamilton, Esq.
Hamilton Law Firm PC
Counsel for the Plaintiff
13 Roszel Road, Suite C 226
Princeton, New Jersey 08540
Tel. (609) 945-7310
Ahamilton@ahlawpc.com

Dated: September 26, 2019

<u>Certification of No Other Action Pending</u>

I hereby certify that I am not aware of any other action pending against these parties or these issues in any Court or of any pending arbitration proceeding.

*/s/ Ayesha Hamilton*
Ayesha Hamilton, Esq.
Hamilton Law Firm PC
Counsel for the Plaintiff
13 Roszel Road, Suite C 226
Princeton, New Jersey 08540
Tel. (609) 945-7310
Ahamilton@ahlawpc.com

Dated: September 26, 2019

<u>VERIFICATION</u>

I, Marita McGee, being of age and sound mind, do hereby certify and say:

1. I am the named Plaintiff in this action;
2. As such, I am both authorized and qualified to verify the statements of fact contained herein;
3. The statements of fact contained herein are based upon my direct, personal knowledge and/or documents, as applicable.
4. I verify that the statements of fact contained herein are true to the best of my knowledge. I am aware that I am subject to punishment under the penalties of perjury if anything contained herein is willfully false.

_____
Marita McGee, Plaintiff

Dated: September 26, 2019

## Certification of No Other Action Pending

I hereby certify that I am not aware of any other action pending against these parties or these issues in any Court or of any pending arbitration proceeding.

 

_____
Ayesha Hamilton, Esq.
Hamilton Law Firm PC
Counsel for the Plaintiff
13 Roszel Road, Suite C 226
Princeton, New Jersey 08540
Tel. (609) 945-7310
Ahamilton@ahlawpc.com

Dated: September 26, 2019

## VERIFICATION

I, Marita McGee, being of age and sound mind, do hereby certify and say:

1. I am the named Plaintiff in this action;
2. As such, I am both authorized and qualified to verify the statements of fact contained herein;
3. The statements of fact contained herein are based upon my direct, personal knowledge and/or documents, as applicable.
4. I verify that the statements of fact contained herein are true to the best of my knowledge. I am aware that I am subject to punishment under the penalties of perjury if anything contained herein is willfully false.

_____
Marita McGee, Plaintiff

Dated: September 26, 2019

14